IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY R.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 6:18-cv-01837-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Timothy R. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") and Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to properly evaluate the medical evidence; (2) failing to credit Plaintiff's testimony; (3) failing to develop the record; and (4) failing to credit lay testimony. Pl.'s Br. 4, ECF No. 16. Because the Commissioner's decision is supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## **STANDARD OF REVIEW**

    A reviewing court will affirm the Commissioner's decision if it is based on proper legal

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

1 – OPINION AND ORDER

standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies his burden with respect the first four steps, the burden shifts to the Commissioner at step five. 20 C.F.R. § 404.1520. At step five the Commissioner must show that the claimant can adjust to other work after considering the claimant's RFC, age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner finds that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease and status post discectomy with residual chronic pain. Tr. 18.[2] The ALJ found that Plaintiff's RFC allowed him to perform light work, but with these limitations:

---

[2] "Tr" refers to the Transcript of the Social Security Administrative Record provided by the Commissioner.

> He can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for 1 hour at a time for a total of 4 hours in an 8-hour workday. He can sit up to 6 hours in an 8-hour workday. He can frequently balance and kneel, and he can occasionally stoop and crouch. He can never climb ladders, ropes, or scaffold. He can tolerate no extreme heat, no extreme cold, and no exposures to hazards, such as machinery and unprotected heights. He cannot perform commercial driving.

Tr. 20. Based on the vocational expert's ("VE") testimony, the ALJ concluded Plaintiff could not perform past relevant work but could perform jobs that exist in significant numbers in the national economy. Tr. 27. The ALJ determined Plaintiff was not disabled. Tr. 28.

**I. Medical Evidence and Plaintiff's RFC**

Plaintiff first argues that the ALJ improperly evaluated the medical evidence, leading to a flawed RFC. Pl.'s Br. 4. Plaintiff specifically challenges the ALJ's assessment of many medical opinions. Pl.'s Br. 6. The Commissioner counters that the ALJ properly weighed the various medical opinions and articulated legitimate reasons justifying the weight appropriated to each. Def.'s Resp. Br. 11, ECF No. 18.

The ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony, while formulating the RFC. 20 C.F.R. §§ 404.1545, 416.945; *see also* SSR 96-8p, 1996 WL 374184 at \*2. The ALJ is also responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001).

Plaintiff focuses much of his argument on the ALJ's evaluation of medical source opinions, alleging that ALJ made many mistakes throughout. "Medical opinions are statements from acceptable medical sources that reflect judgements about the nature and severity of [claimants'] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). "The RFC *must always consider and address medical source opinions*." SSR 96-8p, 1996 WL 374184, at *7 (emphasis added). While the ALJ addressed all the medical source opinions within the record, Plaintiff contends that the ALJ relied too heavily on the opinion of Dr. Victoria Eskinazi over other medical sources. *See* tr. 22–26. Dr. Eskinazi testified at the hearing that Plaintiff's impairments did not lead to a finding of disability. Tr. 65–72. The ALJ justified her reliance on Dr. Eskinazi because "she provided explanation and support for her opinion with citation and reference to the evidence of record." Tr. 26.

Dr. Eskinazi's opinion contradicted multiple examining and treating physicians. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). Dr. Eskinazi's testimony constitutes substantial evidence because even though she was not an examining doctor, she was still subject to cross-examination. *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995). "Where, as here, the record contains conflicting medical evidence, *the ALJ is charged with determining credibility and resolving the conflict*. . . ." *Chaudhry*, 688 F.3d at 671 (9th Cir. 2012) (emphasis added). In the ALJ's view, Dr. Eskinazi's opinion was more consistent with the record-as-a-whole. While Plaintiff disagrees with the ALJ's assessment of the weight given to the opinion, if evidence exists to support more

than one rational interpretation, the Court is bound to uphold the ALJ's interpretation. *Batson*, 359 F.3d at 1196. Here, the ALJ's reliance was not irrational.

And the ALJ did not solely rely on Dr. Eskinazi's medical opinion when determining how much weight to assign to each opinion. Instead, the ALJ provided "specific and legitimate reasons supported by substantial evidence" when explaining the various weights assigned to different medical opinions by providing a detailed summary of Plaintiff's medical records and discussion of other conflicting evidence. *Chaudhry*, 688 F.3d at 671. For example, the ALJ noted inconsistencies between the objective medical evidence and the various doctor's opinions. *Compare* tr. 534–38, 735–36, 906 (opining that Plaintiff was fully disabled because of side-effects from medication and back pain) *with,* tr. 467, 473, 475, 477, 479, 481, 484, 487, 490, 492, 496, 524, 1506 (noting that Plaintiff appeared alert and unaffected by medication) *and*, tr. 390, 402, 523, 759, 798, 874, 881, 1185–86, 1271, 1285, 1343, 1447, 1610, (noting that Plaintiff could heel and toe walk without difficulty); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings."). Relatedly, the ALJ also rejected multiple medical opinions because they largely relied on Plaintiff's self-reports. Tr. 23, 25; *Batson*, 359 F.3d at 1195. The ALJ also pointed to times when medical opinions were contradicted by the doctor's own examination notes. Tr. 24–26; *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citation omitted). Finally, the ALJ noted throughout that Plaintiff's daily activities were inconsistent with the various medical opinions. Tr. 22–26; *Ghanim*, 763 F.3d at 1161 (citation omitted). The Court finds no error in the ALJ's weighing of the treating medical opinions.

Plaintiff also challenges the ALJ's weighing of opinions from reviewing physicians. The ALJ only assigned partial weight to these opinions after determining that these opinions were inconsistent with the longitudinal record and activities of daily living. Tr. 26. While Plaintiff may have weighed the opinions differently, the ALJ still "set forth specific, legitimate reasons for crediting one medical opinion over another." *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). The Court therefore finds that the ALJ did not err in the amount of weight assigned to the reviewing physician opinions. *Id*.

In sum, the ALJ reasonably weighed the conflicting medical opinions and formulated a proper RFC. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996))).

## II. Plaintiff's Testimony

Plaintiff next argues that the ALJ failed to provide clear and convincing reasons for discounting his subjective symptom testimony. An ALJ can only reject testimony about the severity of a claimant's symptoms by offering "clear and convincing reasons" supported by "substantial evidence in the record." *Thomas*, 278 F.3d at 959. But the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). The ALJ may "consider a range of factors," which include:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other

> treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Ghanim*, 763 F.3d at 1163. The Court will uphold an ALJ's credibility finding even if all the ALJ's rationales for rejecting clamant testimony are not upheld. *Batson*, 359 F.3d at 1197.

Plaintiff testified that his back and right leg pain severely limited his ability to work. Plaintiff alleged that the pain forced him to shift his weight throughout the day. Tr. 57–59. Plaintiff also testified that he had trouble walking for more than 10 minutes at a time and that he suffered from drowsiness and dizziness. Tr. 59, 309–10. The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms . . . not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. The ALJ supported this credibility determination with references to inconsistent medical evidence, daily activities, and Plaintiff's pain treatment. Tr. 22–27.

Substantial evidence in the record supports the ALJ's determination. Throughout the ALJ's decision, there was an emphasis on Plaintiff's daily activities and how they were inconsistent with the symptoms alleged. *See* tr. 20–27. Plaintiff testified he struggled with walking, sitting, and standing, yet he reported that his choice of exercise was walking. Tr. 406, 513. Plaintiff also revealed that he packed and moved boxes, that he fished with his son, volunteered at a group home, and worked on his mother's car. Tr. 523, 542, 559, 556, 819, 822. Plaintiff had also worked with his uncle's heating and air-conditioning company. Tr. 22, 53, 561. While this past work did not constitute substantial gainful activity, the ALJ could still consider it when assessing Plaintiff's subjective complaints. *See* 20 C.F.R. § 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more

work than you actually did."). Plaintiff offers a different interpretation, but the ALJ's reasonable interpretation of Plaintiff's activities deserves deference. *Burch*, 400 F.3d at 680–81.

Another rationale the ALJ relied on when rejecting Plaintiff's testimony was inconsistency between Plaintiff's self-reported symptoms and the medical evidence in the record. As discussed, the ALJ cited multiple times when doctors noted that objective medical findings did not support Plaintiff's allegations of severe pain. *See, e.g.*, tr. 390, 402, 467, 473, 475, 477, 479, 481, 484, 487, 490, 492, 496, 523–24, 759, 798, 874, 881, 1185–86, 1271, 1285, 1343, 1447, 1506, 1610. The ALJ also considered how Plaintiff's use of medication helped curtail his symptoms. Tr. 22. While Plaintiff argues that his use of medication hindered his ability to work, the ALJ noted many instances in the record where medication led to an improvement. *See* tr. 465, 470, 473, 475, 477, 550, 552.

The lack of objective medical evidence, along with other permissible rationales for rejecting Plaintiff's testimony, constituted clear and convincing reasons for rejecting Plaintiff's symptom testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *Thomas*, 278 F.3d at 958–59 (upholding ALJ credibility determination based on lack of "objective medical evidence," along with other permissible rationales for discounting claimant testimony). The ALJ therefore provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

### III. Duty to Develop the Record

Plaintiff next argues that the ALJ failed in their duty to fully and fairly develop the record. Pl.'s Br. 20. "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). The duty to develop the record is triggered where "there is ambiguous evidence or when the evidence is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453,

460 (9th Cir. 2001); *see also Garcia v. Comm'r of Soc. Sec. Admin.*, 768 F.3d 925, 930 (9th Cir. 2014) (explaining that an ALJ always has a "special duty to fully and fairly develop the record") (citation omitted)). When the record is ambiguous or inadequate, an "ALJ may discharge [their] duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or *keeping the record open after the hearing to allow supplementation of the record.*" *Tonapetyan*, 242 F.3d at 1150 (emphasis added) (citations omitted). The ALJ may also order a consultative exam to satisfy their duty. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

Plaintiff points to Dr. Eskinazi's testimony at the hearing where, after being asked if "there would be a benefit to a . . . physical exam," responded that "It wouldn't hurt." Pl.'s Br. 21 (citing tr. 71–72). From Plaintiff's perspective, this testimony triggered the ALJ's special duty to fully and fairly develop the record, which the ALJ failed to meet by declining to order a consultative examination. The Commissioner responds that while the ALJ did not order the consultative examination, the ALJ still met their duty by keeping the record open to receive updated treatment notes. Def.'s Resp. Br. 3 (citing tr. 43–45, 80–81).

The ALJ considered these updated records when making its disability determination. Tr. 15. Even if the Court assumes that the ALJ's duty to fully and fairly develop the record was triggered, the ALJ met this burden by keeping the record open and allowing the submission of additional medical records. *Tonapetyan*, 242 F.3d at 1150. While Plaintiff disagrees and contends that a consultative examination was necessary, regulations direct an ALJ to order a consultative examination only when there is difficulty acquiring evidence from treating sources. 20 C.F.R. §§ 404.1512(e), 416.912(e). But there was no difficulty acquiring additional evidence here, as shown by the records submitted and considered after the hearing. Tr. 15.

Plaintiff's argument fails not because it is unreasonable, but because the Court cannot substitute its own judgment for that of the ALJ when it is supported by substantial evidence. *Mayes*, 276 F.3d at 461. Thus, the Court finds no legal error.

### IV. Lay Witness Testimony

Plaintiff's final assignment of error is that the ALJ gave incorrect weight to the testimony of several lay witnesses; specifically, a private disability analyst, Plaintiff's friend, and an employability assessor. Pl.'s Br. 19–20, 26–27. An ALJ must provide "germane reasons" for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511. An ALJ may also reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122.

The ALJ provided germane reasons for rejecting the various lay testimonies. For example, as for the third-party function report of Plaintiff's friend, parts of it generally described the same limitations alleged by Plaintiff. Tr. 21, 312–18. Because the ALJ did not err in rejecting Plaintiff's own testimony about the extent of his limitations, the ALJ did not err in giving partial weight to the lay testimony of Plaintiff's friend. *Molina*, 674 F.3d at 1122. Similarly, in the ways that the friend's third-party function report differed from Plaintiff's testimony, the ALJ made sure to explain that those portions were rejected because they conflicted with Plaintiff's daily

activities and the longitudinal medical record. Tr. 21. Inconsistency with the record is a germane reason for rejecting lay testimony. *Lewis*, 236 F.3d at 511.

With regard to the private disability analyst, Plaintiff argues that the ALJ's erred by failing to specifically reject the opinion that Plaintiff needed to rest every 15 to 30 minutes. Pl.'s Br. 20. The Commissioner concedes that the ALJ erred here, but counters that it was harmless. Def.'s Resp. Br. 16. It is harmless error if it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). The Court finds this failure to discuss the assessment of Plaintiff's need to rest harmless error because it is inconsistent with the record and inconsequential to the nondisability determination. *Lewis*, 236 F.3d at 511.

Finally, Plaintiff argues that the ALJ should not have credited the employment assessment because the individual making the assessment was not qualified as a vocational expert. Pl.'s Br. 28. The ALJ assigned partial weight to this opinion "because it is consistent with the vocational expert's testimony that there is other work the claimant could perform in the national economy." Tr. 25. But merely mentioning this opinion is not error for two reasons. First, it was not improper for the ALJ to consider this opinion because an ALJ must consider all evidence in the record when assessing an RFC at step two. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Second, the ALJ did not discuss this assessment at step five and only relied on the VE. Tr. 27–28.

In sum, the ALJ did not err in assigning different weights to the various lay testimony.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 24th day of March, 2020.

                                          **_s/Michael J. McShane_____**
                                          Michael J. McShane
                                          United States District Judge